UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Linda Anderson,

           Plaintiff,

           **MEMORANDUM OPINION**
v.            **AND ORDER**
           Civil No. 14-428 ADM/LIB

Sappi Fine Paper North America,

           Defendant.

_____

Sean M. Quinn, Esq., Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, on behalf of Plaintiff.

David G. Gabor, Esq., The Wagner Law Group, Boston, MA, and Charles F. Knapp, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On October 15, 2015, the undersigned United States District Judge heard oral argument on Plaintiff Linda Anderson's Motion for Summary Judgment [Docket No. 34] and Defendant Sappi Fine Paper North America's ("Sappi") Motion for Summary Judgment [Docket No. 38]. On December 9, 2015, the matter was taken under advisement after the parties informed the Court that settlement discussions were unsuccessful. For the reasons stated below, Anderson's motion is denied and Sappi's motion is granted.

## II.  BACKGROUND

**A.  Anderson's Medical History**

Linda Anderson ("Anderson"), born in 1959 with bilateral clubfeet, has endured injuries over the years to her right shoulder, both knees, both hands and wrists, and both ankles and feet.

Administrative Record [Docket No. 32] Attach. 1 at 33.[1] Anderson had her first major surgery—arthroscopic knee—in 1983 when she was just 23 years old. Tr. 670. Anderson, who is morbidly obese, has received over 30 years of chiropractic care to address medical issues in her neck, back, shoulder, and knees. Id. 331–32. Throughout her life, Anderson has been fitted with an array of casts and braces designed to reduce her discomfort. Id. 214. Despite these efforts, Anderson has not found lasting relief. Although living in chronic pain, Anderson remained employed, working as a carton line operator in Sappi's industrial paper mill, a job she began in 1978 and a job that requires extended time on her feet. Id. 712. Anderson fought through the pain in her feet to remain employed at the Sappi mill. As noted by Anderson's long time podiatrist, Dr. James Deegan, "[Anderson] relates she has worked [at Sappi] for years in significant pain and just sucked it up, which is quite amazing, because most people would not be able to tolerate walking on this part of her foot." Id. 135–36.

In addition to Dr. Deegan, Anderson consulted with Drs. Xan Courville, Benjamin Nelson, and Benjamin Clair. Dr. Courville, an orthopedist, examined Anderson on July 5, 2012 and recommended physical therapy, a special ankle brace, and cortisone injections to alleviate her pain. Id. 169–71. Anderson received multiple cortisone injections and follow-up assessments from Dr. Nelson between July 16, 2012 and October 4, 2012. Id. 150–168. Anderson saw Dr. Clair, a podiatrist, for an additional opinion on July 18, 2012. Id. 225. In addition to suggesting a custom ankle brace, Dr. Clair reviewed with Anderson an "extensive

---

[1] The Administrative Record is docketed as Docket Numbers 32 and 33, with the pages individually marked from "SAP 000001" to "SAP 000884." Citations to the Administrative Record will be denoted as citations to the Transcript and will be identified by the number marked on the referenced page.

and reconstructive" surgical option.  Id. 227.

**B.  Final Day at Sappi and Foot Fracture**

In late July 2012, Anderson left work planning to begin vacation the following day.  Am. Compl. [Docket No. 24] ¶ 3.  While on vacation, Anderson fractured a bone in her foot, which, combined with her long-term feet and knee problems, resulted in her inability to stand or walk for any significant period.  Tr. 36.  In December, Anderson saw Dr. Deegan, who advised her to "remain off of work" and to "look at disability at this point."  Id. 135–36.  In a follow-up examination on January 7, 2013, Dr. Deegan further observed,

> I am quite surprised that [Anderson] was able to work all these years with this significant [of] a deformity, but she relates she just sucked it up and had a family to raise and just tolerated the pain but would get home at the end of the day and just be extremely uncomfortable, which is really understandable. . . .  I want her off of work so she can minimize her pain and not re-aggravate the healing 5th metatarsal fracture.

Id. 133-34.

Anderson had not returned to work when she visited Dr. Deegan again on February 20, 2013.  Anderson's foot injury was not progressing; Dr. Deegan observed that:

> [Anderson's] feet have been getting progressively worse.  [Anderson] is not able to tolerate standing and lifting, she is limited to carrying no more than 25 pounds at one time, and limited to no more than 2 hours per day of standing.  She is essentially walking on a part of her heel bone that should not be touching the ground, as her foot has rockered down and formed a very deformed shape.

Id. 214.  Dr. Deegan further noted that "[a]t this point [Anderson] is looking at developing a medical disability from the paper mill. . . .  [T]he importance of working any type of job in the future would have to be sedentary but that would be difficult to secure. . . ."  Id. 130.

In May 2013, Dr. Deegan completed paperwork for Anderson's long term disability claim, stating that she would never be able to lift more than 25 pounds or stand for more than

two hours during an eight hour work day. Id. 228. In August, Anderson saw Dr. David Neese, another podiatrist, who recommended a different, more significant, foot brace as a final non-surgical response to her pain. Id. 314. If that failed, Dr. Neese suggested surgery. Id.

**C. Anderson Determined Disabled by the Social Security Administration**

By letter dated January 28, 2013, the Social Security Administration ("SSA") determined Anderson to be disabled, effective July 27, 2012. Id. 221–24. In making its determination, the SSA relied on Anderson's documented issues with her feet, knees, hands, and arthritis. Id. 841–48. The SSA adopted Dr. Deegan's assessment that her exertional limitation was to sit for about six hours of an eight-hour workday. Id. 845. The SSA's assessment further concluded that Anderson did not have the residual functional capacity to perform her job at Sappi because Anderson "is limited to sedentary work." Id. 847.

**D. Sappi Denies Anderson Disability Retirement Benefits**

Sappi has an Employees' Retirement Plan (the "Plan") that provides disability retirement benefits to qualified employees. Id. 768–827. Under the Plan, an individual is entitled to disability retirement benefits if they have a "Total and Permanent Disability," which is defined as:

> a physical or mental disability as a result of which a Member is wholly and continuously <u>unable to engage in any occupation or perform any work for any kind of compensation of financial value</u>, unless such disability (i) was contracted, suffered or incurred while the Member was engaged in, or resulted from the Member's having engaged in, a criminal act, (ii) resulted from a deliberately self-inflicted injury, or (iii) was contracted, suffered or incurred while in the service of the armed forces of any country. Any such disability must have existed while employed by [Sappi] and must be certified by a licensed physician approved by [Sappi] to be such as can reasonably expected to continue during the remainder of the Member's lifetime.

Id. 779 (emphasis added).

4

Sometime in 2013, Anderson applied for disability retirement benefits. Sappi directed Anderson to see Dr. Stefan Kaiser, an occupational medicine specialist, for a disability retirement exam. Id. 254. The exam occurred on March 8, 2013. Id. 127. Dr. Kaiser noted Anderson's "longstanding history" of foot and ankle pain, clubfeet, surgical history, and obesity. Id. 127–29. Dr. Kaiser reviewed the most recent x-rays of Anderson's feet and assessed the range of motion, reflexes, and pain levels in her legs and feet. Id. 129. Although he recognized Anderson's "chronic foot pain" and "longstanding history of osteoarthritis of both feet," Dr. Kaiser stated that he does "not believe that she is disqualified from her position. Rather, she may need certain accommodations to continue productively, such as allowing for change in position from sitting, standing, or walking." Id. 129.

By letter dated May 10, 2013, Sappi denied Anderson's application. Id. 693. In reaching the conclusion that Anderson did not suffer from a "total and permanent disability," Sappi reviewed and relied upon the assessments of Drs. Kaiser, Deegan, and Courville. Id. 693–94. Although Sappi recognized Anderson's "severe foot pain," it nevertheless concluded that since Anderson was able "to engage in any occupation or perform any work for any kind of compensation of financial value," she was not entitled to disability retirement benefits. Id. 693–94.

Anderson appealed Sappi's decision. Id. 690–92. In support of her appeal, Anderson provided Sappi with additional medical records, as well as the disability determination made by the SSA. Id. In her appeal letter, Anderson claimed that the restrictions and accommodations recommended by Dr. Kaiser made her ineligible for any position at Sappi. Anderson further claimed that the documentation Sappi relied on failed to account for the full extent of her injuries

and did not consider the ongoing issues with her knees, neck and back.  Id.

On October 11, 2013, Sappi denied Anderson's appeal.  Id. 872.  Despite observing that Anderson's "ability to work has been adversely affected by her physical conditions," Sappi once again concluded that Anderson failed to establish that she is "unable to engage in any occupation or perform any work for any kind of compensation of financial value."  Id. 873.  Anderson then filed this lawsuit, alleging that Sappi's decision to deny her disability benefits under the Plan was arbitrary and capricious.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted).  "[S]ummary judgment need not be denied merely to satisfy a litigant's speculative

hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

**B. Denial of Benefits Determination**

This lawsuit arises under the Federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 18 § 1001 *et seq.* ERISA provides a plan participant with the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that when a plan gives an administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an administrator's decision is to be reviewed for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 998–99 (8th Cir. 2005) (en banc). Here, the Plan states that "[t]he Administrative Committee shall have the exclusive discretionary authority to interpret the provisions of the Plan, to determine eligibility for and the amount of benefits, to make factual determinations, and to determine any question that may arise in the operation or administration of the Plan." Tr. 807. Thus, this Court reviews the Administrative Committee's decision to deny Anderson disability benefits under an abuse-of-discretion standard. Waldoch v. Medtronic, 757 F.3d 822, 829 (8th Cir. 2014).

**1. Abuse of Discretion Standard**

Under the abuse-of-discretion standard, "the administrator's decision should be reversed 'only if it is arbitrary and capricious.'" Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011) (quoting Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 896 (8th Cir. 2009)). "A court is not to substitute its own judgment for that of the plan

administrator." Alexander v. Trane Co., 453 F.3d 1027, 1031 (8th Cir. 2006). A court examining whether an administrator abused its discretion, therefore, must carefully scrutinize the administrator's decision and determine whether it was "extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious." Meyers v. Hartford Life & Accident Ins. Co., 489 F.3d 348, 351 (8th Cir. 2007) (citation omitted). The question is whether a "reasonable person could have reached a similar decision, given the evidence before him, not [whether] a reasonable person would have reached that decision." Prezioso v. Prudential Ins. Co. of Am., 748 F.3d 797, 805 (8th Cir. 2014) (quoting Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (emphasis in original)).

### 2. The Administrative Committee did not Abuse its Discretion

Anderson makes three arguments in support of her contention that the Administrative Committee abused its discretion. First, Anderson claims that the Administrative Committee's dual role of both determining eligibility and paying benefits creates a conflict of interest that taints the decision-making process. Second, Anderson argues that Sappi relied upon a few isolated portions of her medical record and failed to sufficiently credit the severity of her medical condition and her physicians' observations that she was unable to work a non-sedentary job. Finally, Anderson argues that the Plan's definition of total and permanent disability is impossible to meet, rendering illusory Sappi's apparent obligation to pay disability retirement benefits.

#### a. Conflict of Interest

Anderson's initial challenge attacks Sappi's objectiveness in denying her benefits. Anderson's argument is that Sappi, as both the gatekeeper deciding who is entitled to receive

benefits and the payor of such benefits, operates under a conflict of interest when evaluating disability applications. Sappi, in response, does not directly challenge Anderson's assertion. Nor could it credibly do so. Since Sappi executives are also members of the Sappi Administrative Committee, the conflict of interest is readily apparent. See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (noting that when the entity that administers the plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," such a "dual role creates a conflict of interest").

Even so, Sappi's conflict of interest is not, in and of itself, a recognized reason to conclude that the Administrative Committee abused its discretion. Although the Eighth Circuit previously recognized a lower deferential standard of review to apply when a palpable conflict of interest existed, the Supreme Court has since held "that a conflict of interest should be analyzed as a factor under the abuse-of-discretion standard instead of changing the standard from abuse of discretion to a less deferential standard." Waldoch, 757 F.3d at 830 n.3 (citing Metro. Life Ins. Co., 554 U.S. at 115–17).

In weighing the conflict of interest, while normally considered equally with the other factors, the factor may prove important, and "perhaps of great importance," when an administrator has as "history of biased claims administration." Metro. Life Ins. Co., 554 U.S. at 117. Anderson has located one prior instance where Sappi was found to have arbitrarily denied disability benefits. Stoddard v. S.D. Warren Co., No. 06-279, 2006 WL 3227766, at *3–4 (D. Minn. Nov. 7, 2006).[2] One seemingly biased decision from nearly a decade ago does not show a "history of biased claims administration." Metro Life. Ins. Co., 554 U.S. at 117. Accordingly,

---

[2] S.D. Warren Company does business under the name Sappi.

Sappi's conflict of interest will be viewed as but one factor in assessing the lawfulness of Sappi's decision to deny Anderson disability benefits.

### b. Sufficiency of the Evidence

Anderson's second argument challenges the evidence Sappi relied upon when it declined to extend Anderson Plan benefits. Anderson complains that Sappi relied on "snippets of snippets" of her medical history. Anderson challenges the comprehensiveness of some the doctors' examinations and argues that Sappi failed to consider relevant information regarding her disability.

The assessment of Sappi's decision must be based on whether it was supported by substantial evidence, meaning "more than a scintilla but less than a preponderance." Waldoch, 757 F.3d at 832 (quoting Midgett, 561 F.3d at 897) (internal quotation marks omitted). A reviewing court "may consider both the quantity and quality of evidence before a plan administrator." Wise v. Kind & Knox Gelatin, Inc., 429 F.3d 1188, 1190 (8th Cir. 2005) (citation omitted). However, under the abuse-of-discretion standard, "the reviewing court should consider only the evidence before the plan administrator when the claim was denied." Shelton v. ContiGroup Cos., Inc., 285 F.3d 640, 642 (8th Cir. 2002) (citing Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998)).

Sappi's initial denial letter is dated May 10, 2013. Any doctor examinations and related reports after May 10, 2013 were therefore unavailable to Sappi and thus cannot be considered when deciding if Sappi abused its discretion in initially denying Anderson benefits. Shelton, 285 F.3d at 642. This includes Dr. Deegan's notes from his May 15, 2013 examination, the August 2013 examination conducted by Dr. Neese, and any issues relating to Anderson's aggravation of

her rotator cuff, which was confirmed by MRI on June 13, 2013.

Anderson accuses Sappi of not relying on the findings of Dr. Nelson, the physician who administered foot injections for interim relief. However, his role was rather limited and does not provide much support for Anderson's claim. Dr. Nelson's final observation of Anderson, which occurred on October 4, 2012, noted that she had been off crutches for the past four days, was doing well with normal footwear, and reported only minimal pain after prolonged walking, leading Dr. Nelson to recommend that Anderson resume "normal activities as tolerated." Tr. 150–51. Compared to Drs. Deegan and Kaiser, Dr. Nelson did not perform a comprehensive medical evaluation and any assessments Dr. Nelson made regarding Anderson's condition were not made in the context of determining whether or not she was able to work. Accordingly, because Dr. Nelson's observations and assessments do not aid Anderson's case, Sappi did not abuse its discretion in failing to consider any reports made by Dr. Nelson.

Anderson also complains that Sappi failed to account for the assessment of Dr. Clair, who saw Anderson on July 23, 2012 for a second opinion on her foot and ankle pain. Similar to Dr. Nelson, Dr. Clair did not opine on whether Anderson was disabled, nor did he offer any conclusions that bear on the determination that the Administrative Committee was asked to make in deciding Anderson's application. Rather, Dr. Clair suggested Anderson continue with foot injections, wear a custom ankle brace, and perhaps consider a surgical remedy.

The evidence Sappi did consider was developed from examinations that occurred months after Anderson saw Dr. Clair. Indeed, Anderson's appointment with Dr. Clair occurred prior to Anderson's final day at work and before she suffered her additional foot and shoulder injuries. Since Sappi considered the later assessments of Drs. Deegan and Kaiser, who, unlike Dr. Clair,

both accounted for Anderson's more recent injuries, the value of Dr. Clair's examination is diminished by the assessments of Drs. Deegan and Kaiser. Thus, Sappi's decision to discount any observations of Dr. Clair was not an abuse of discretion.

Anderson additionally argues that Sappi failed to consider her multiple surgeries and the extensive physical therapy designed to relieve her foot and ankle pain. This argument is belied by the notes of Drs. Deegan and Kaiser, who both commented on Anderson's extensive medical history. Dr. Kaiser explicitly referenced Anderson's previous knee and shoulder surgeries in forming his conclusions. Since Sappi considered the records of Drs. Deegan and Kaiser, who in turn considered Anderson's complete medical history, Sappi can not be fairly adjudged to have ignored Anderson's extensive and long-term medical record.[3] No abuse of discretion occurred with respect to Anderson's prior surgeries or physical therapy history.

Anderson further contends that Sappi's decision is undermined by the SSA's recognition of her disability. This argument lacks merit because the SSA's definition of disabled is significantly different Sappi's. The SSA definition—"the inability to sustain substantial gainful employment"—is more favorable than Sappi's definition of "wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation of financial value." Am. Compl. ¶ 6; Tr. 779. Since "[a]n ERISA plan administrator or fiduciary generally is not bound by an SSA determination that a plan participant is disabled," Sappi did not abuse its

---

[3] Anderson's arguments pertaining to Sappi's lack of appreciation for her more recent rotator cuff injury, which was diagnosed on June 13, 2013, are also unpersuasive. The most concerning injuries Anderson suffered, and the injuries Drs. Deegan and Kaiser focused on in determining her able to work, are in her feet. While significant, the injury to Anderson's shoulder does not disturb the assessments of Drs. Deegan and Kaiser that the chronic and severe injuries to Anderson's feet do not render her disabled.

discretion by refusing agree with the SSA and recognize Anderson as disabled. Farfalla v. Mut. of Omaha Ins. Co., 324 F.3d 971, 975 (8th Cir. 2003) (quoting Jackson v. Metro Life Ins. Co., 303 F.3d 884, 889 (8th Cir. 2002)).

In essence, Anderson takes issue with the conclusions of Drs. Deegan and Kaiser. The gist of Anderson's complaint is that they both incorrectly determined that Anderson is capable of engaging in some type of employment, therefore rendering her ineligible for Plan benefits. Unlike a significant number of ERISA cases, Sappi was not tasked with weighing conflicting medical opinions. See, e.g., Smith v. Unum Life Ins. Co. of Am., 305 F.3d 789, 796 (8th Cir. 2002) ("The administrative record contains evidence both for and against Smith's claim."); Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 935 (8th Cir. 2010) (noting that "there was conflicting medical evidence whether Darvell was disabled"). Sappi did not have to assess conflicting medical opinions. Absent from the record is any opinion from any physician that examined Anderson who determined that she was unable to work without an accommodation. To the contrary, Dr. Deegan, the physician perhaps most familiar with Anderson and her medical history, concluded on February 20, 2013, that Anderson "cannot lift more than 25 pounds, she cannot stand for more than 2 hours and the importance of working any type of job in the future would have to be sedentary." Tr. 130. Dr. Kaiser, who examined Anderson on March 8, 2013, expressly concluded that Anderson "is [not] disqualified from her position. Rather, she may need certain accommodations to continue productively, such as allowing for change in position from sitting, standing, or walking." Id. 129. Even the SSA, who adjudged Anderson disabled, noted that she would be able to perform sedentary work. Id. 712. Simply put, Sappi did not abuse its discretion in denying Anderson disability benefits for any of the evidentiary issues

13

Anderson raises.

### c. Impossible Standard

Finally, Anderson argues that the Plan's definition of "Totally and Permanently Disabled" is impossible to meet. Anderson contends that few, if any, living humans would be able to meet Sappi's definition. Anderson thus argues that Sappi's promise to pay disability benefits is illusory because nobody is able to demonstrate they meet the Plan's definition of disabled.

Anderson's contention has merit. On its face, the number of people who satisfy Sappi's strict definition is shockingly small. It is indeed difficult to conceive of a person who would be completely unable to perform any work for any compensation or value. Although recognizing that Sappi is under no burden to produce evidence to show that any individuals have qualified as disabled under its exacting standard, the Court is not unmindful that Sappi did not proffer any evidence to show that it has paid disability retirement benefits in the past. When pressed on this issue at the hearing, Sappi's counsel did not respond directly to the inquiry, rather stated only that the Plan's language was lawful.

Unfortunately, what Anderson argues for, rewriting a single provision in an otherwise enforceable contract, is not recognized in this Circuit. See Klosek v. Am. Express Co., No. 2008 WL 405734, at *12 (D. Minn. Aug. 26, 2008) ("As the doctrine of illusory contract is not applied to individual terms, the plaintiffs' reliance on it is misplaced."). Although exceedingly difficult to meet, the law does not compel Sappi to have a more favorable definition of disabled; the law does not even require Sappi to have a plan at all. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003).

While this result may seem harsh considering the extent of Anderson's well-documented, multiple medical conditions and amazing perseverance to work through her pain to stay employed at the mill for over thirty years, Sappi's stringent definition of disability is permissible. Since Anderson did not demonstrate that she met that definition, Sappi's decision to deny Anderson benefits cannot be overturned.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 34] is **DENIED**.

2. Defendant's Motion for Summary Judgment [Docket No. 38] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

           s/Ann D. Montgomery           
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 27, 2016.